**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PHYLLIS PORTER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BOARD OF EDUCATION OF THE ) <br> CITY OF CHICAGO; KAREN ) <br> SAFFOLD, individually; BARBARA ) <br> BYRD-BENNETT, individually; ) <br> FORREST CLAYPOOL individually; ) <br> JAMES SULLIVAN, individually; ) <br> JAMES BEBLEY, individually; ) <br> CYNTHIA HARRIS, individually; ) <br> CHARLES LITTLE, individually; ) <br> JOHN LAMANTIA, individually; and ) <br> RONALD MARMER, ) <br> ) <br> Defendants. ) | No. 17-CV-01780 <br><br> Judge John J. Tharp, Jr. |

**MEMORANDUM OPINION AND ORDER**

After litigating various claims in the Circuit Court of Cook County against the Board of Education of the City of Chicago (the "Board") and its employees for their alleged retaliatory conduct, Phyllis Porter filed this lawsuit in federal court alleging violations of her constitutional rights under 42 U.S.C. § 1983 ("Section 1983"). Porter, an education administrator and consultant, claims that a Chicago Public Schools ("CPS") supervisor offered to steer contracts to Porter and her company in exchange for $10,000. Porter claims that she was retaliated against in violation of her First and Fourteenth Amendment rights after she refused to pay the bribe and reported it to law enforcement authorities. The Board moves to dismiss Porter's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Because Porter's claim against the Board is barred by *res judicata*, and is otherwise insufficient to state a claim for *Monell* liability, the Court grants the Board's motion to dismiss.

# BACKGROUND[1]

Porter is an education administrator and consultant. She lives in Chicago and runs a business called PPES, Inc., which provides consulting and professional development services to CPS. The Board is a quasi-municipal body that manages CPS. Forrest Claypool and Barbara Byrd-Bennett were Chief Executive Officers for CPS. James Sullivan was employed by the Board as the Inspector General for CPS. James Bebley, Ronald Marmer, Cynthia Harris, Charles Little, and John Lamatia were employed by the Board as senior leaders. Karen Saffold was employed by the Board as a supervisor to certain CPS schools.

In 2006, Porter and PPES had agreements to provide services to approximately 115 CPS schools. In July of that year, Saffold offered to help Porter obtain contracts with CPS in exchange for a $10,000 bribe payment from Porter. A CPS principal, Dushon Brown, was present when Saffold made the offer. Porter rejected Saffold's offer and reported her conduct to Sullivan, Byrd-Bennett, Claypool, Bebley, Harris, Little, Lamantia, and Marmer. She also reported the bribe solicitation to the FBI and the Cook County State's Attorney's Office.

Saffold retaliated against Porter for speaking out about the incident. Saffold took steps to deny Porter and PPES business opportunities with CPS. She worked with Byrd-Bennett and others to devise a plan to blacklist Porter from CPS schools and refused to pay Porter for the

---

[1] In reviewing a motion to dismiss, the Court may consider: (1) the plaintiff's complaint and any documents attached to it, (2) documents attached to the motion to dismiss that are critical to the complaint and referred to in it, (3) additional facts set forth in the plaintiff's response to the motion or in any documents attached to the response, as long as those additional facts are consistent with the allegations in the complaint, and (4) information that is subject to proper judicial notice, including public records. *Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002); *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 n.4 (7th Cir. 2000). When considering these materials, the Court accepts the plaintiff's well-pleaded factual allegations as true and construes all reasonable inferences in favor of the plaintiff. *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289-90 (7th Cir. 2016).

work she had already completed. Sometime after November 2009, the principal for a CPS school, Curtis Elementary School, told Porter that Saffold instructed him not to do business with PPES or Porter. Saffold told the principal to use a different company, Progressive Group, and directed the budget manager to pay Progressive Group even though the company did not provide any services to the school. In addition, the Board and/or the individual defendants changed certain policies to prevent Porter from getting contracts, hired an investigator to tell parents and principals that Porter was under investigation, and interfered with Porter's payment process, causing her to lose a contract.

According to the complaint, the Board and/or the individual defendants had evidence that Saffold asked Porter for a bribe but covered up the misconduct and took steps to destroy or hide evidence that could implicate Saffold. The Inspector General for CPS, James Sullivan, who was assigned to investigate Saffold, conspired with Saffold and refused to investigate her.

Porter also alleges, on information and belief, that Saffold was engaged in a conspiracy to steer CPS contracts to other vendors and contractors in exchange for millions of dollars in kickbacks and bribes. Hank Johnson, an agent or contractor for a CPS vendor that supplied copiers and printers, told Porter that Saffold demanded a $500 kickback for each copier he sold to the CPS schools that Saffold supervised. The payment was in exchange for Johnson's ability to do business with those schools. Principals of those schools told Porter that Saffold pressured them to purchase copiers from Johnson when they did not actually need the copiers.

In addition to reporting Saffold's conduct to law enforcement authorities, Porter also filed a lawsuit in 2008 in Cook County Circuit Court against the Board, Saffold, and others for their retaliatory conduct. In that lawsuit, Porter ultimately filed a sixth amended complaint in September 2016 alleging breach of contract, defamation, and intentional infliction of emotional

distress claims. In April 2017, Judge James E. Snyder entered a judgment in favor of Porter and against the Board for $75,000, plus costs, on Porter's breach of contract claims.

In this lawsuit, Porter's amended complaint[2] alleges one count against the Board for violations of her First and Fourteenth Amendment rights (Count I). She also brings multiple counts against the individual defendants for conspiracy to violate her First and Fourteenth Amendment rights (Counts II-IV). In addition, the complaint includes an indemnification claim against the Board for any damages caused by the individual defendants while acting in the scope of their employment (Count V). After the Board's motion to dismiss was briefed, Saffold, Sullivan, Bebley, Harris, Little, Lamantia, and Marmer were dismissed from the case based on Porter's failure to timely serve them. Porter subsequently voluntarily dismissed her claims against Claypool and Byrd-Bennett. Therefore, the only remaining claim in the case is against the Board.

## DISCUSSION

Porter's claim against the Board seeks to hold the governmental entity responsible for the alleged retaliatory conduct of its employees. Porter asserts that the Board had several *de facto* policies, practices, or customs that were pervasive and widespread, including: concealing or suppressing misconduct by senior leadership; failing to maintain accurate and complete records of complaints and investigations of misconduct by senior leadership officials; hiring and retaining unqualified employees and failing to properly train, monitor, or supervise senior leaders; and maintaining a "code of silence" resulting in a refusal or failure to report misconduct. Porter claims that these *de facto* policies encouraged or motivated Saffold and Byrd-Bennett to

---

[2] Porter filed her initial complaint on March 6, 2017. After the Board filed a motion for a more definite statement, Porter was granted leave to file an amended complaint. Her amended complaint was filed on August 11, 2017.

engage in conduct that violated Porter's constitutional rights. Specifically, the alleged policies allowed Saffold and Byrd-Bennett to retaliate against Porter for speaking out about Saffold's misconduct, in violation of Porter's First Amendment right to free speech and her Fourteenth Amendment right to equal protection. Porter also claims that Saffold and Byrd-Bennett violated her Fourteenth Amendment right to due process by cancelling her contracts.

The Board moves to dismiss Porter's complaint on several grounds. First, the Board argues that Porter's claim against it is barred by the doctrine of *res judicata*. Second, the Board asserts that Porter has failed to allege sufficient facts to plausibly allege a violation of her First or Fourteenth Amendment rights. The Board also argues that Porter's complaint does not adequately plead a basis for municipal liability under *Monell*. Finally, the Board asserts that Porter's claim is time-barred.

### I. *Res Judicata*

The Board argues that Porter's claim is barred by *res judicata* because it could have been litigated in the state court lawsuit that Porter previously filed against the Board. *Res judicata* bars a subsequent lawsuit between the same parties involving the same cause of action if a final judgment on the merits was entered in a prior lawsuit. *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998). Because *res judicata* is an affirmative defense, it should be raised in a motion for judgment on the pleading under Rule 12(c) rather than a motion to dismiss under Rule 12(b)(6). *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010). A court, however, may consider the defense of *res judicata* on a 12(b)(6) motion if the court has before it everything needed to be able to rule on the defense. *Id.*

The doctrine of *res judicata* "protects the finality of a judgment and prevents parties from undermining it by attempting to relitigate the claim." *McDonald v. Adamson*, 840 F.3d 343, 346

(7th Cir. 2016) (citing *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011)) (internal quotations omitted). It "promotes predictability in the judicial process, preserves the limited resources of the judiciary, and protects litigants from the expense and disruption of being haled into court repeatedly." *Palka*, 662 F.3d at 437. *Res judicata* applies to civil rights actions brought under Section 1983. *Rooding v. Peters*, 92 F.3d 578, 580 (7th Cir. 1996) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 497 (1973)). When determining the applicability of *res judicata* based upon a previously-filed state court lawsuit, a federal court applies the law of the state in which the previous lawsuit was filed. *Rose v. Bd. of Election Comm'rs for Chicago*, 815 F.3d 372, 374 (7th Cir. 2016); *Rooding*, 92 F.3d at 580. Accordingly, the Court applies Illinois law to determine whether Porter's previous lawsuit bars her current claim against the Board.

Under Illinois law, *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction serves as an absolute bar to a subsequent action between the same parties involving the same cause of action. *Richter v. Prairie Farms Dairy, Inc.*, 53 N.E.3d 1, 8 (Ill. 2016). "The bar extends not only to what was actually decided in the prior action, but also to those matters that could have been decided." *Id.* Three requirements must be satisfied for *res judicata* to apply: "(1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of cause of action, and (3) an identity of parties or their privies." *Id.* (collecting cases).

Here, an identity of parties exists. The current case before this Court and Porter's state court case both involve Porter as a plaintiff and the Board as a defendant. Porter sued different individual defendants in her state case than in her federal case, but those differences are not relevant to determining whether *res judicata* applies to her claim against the Board.

A final judgment on the merits rendered by a court of competent jurisdiction also exists. "To be 'final,' a judgment or order must terminate the litigation and fix absolutely the parties' rights, leaving only enforcement of the judgment." *Richter*, 53 N.E.3d at 8. Courts considering whether a judgment or order is final should "look to its substance rather than its form." *Id.* (citing *In re J.N.*, 435 N.E.2d 473, 476 (Ill. 1982)). *Res judicata* does not apply until the appellate process in a case has been exhausted. *Relph v. Bd. of Ed. of DePue Unit Sch. Dist. No. 103 of Bureau Cty.*, 420 N.E.2d 147, 150 (Ill. 1981) ("Since the judgments in these cases were still subject to the appellate process, they were not to be given res judicata effect."); *see also In re Marriage of Lehr*, 740 N.E.2d 417, 423 (Ill. App. Ct. 2000) ("where a judgment remains subject to the appellate process, it is not to be given *res judicata* effect"). A party's failure to timely appeal a judgment renders the judgment final for purposes of *res judicata*. *Robertson v. Winnebago Cty. Forest Preserve Dist.*, 703 N.E.2d 606, 612 (Ill. App. Ct. 1998), *abrogated on other grounds by Kingbrook, Inc. v. Pupurs*, 779 N.E.2d 867, 871-72 n.2 (Ill. 2002).

In Porter's state court case, there is a final judgment on the merits. On April 28, 2017, after several days of trial, Judge Snyder of the Circuit Court of Cook County entered a judgment in favor of PPES and against the Board in the amount of $75,000 plus costs on Porter's breach of contract claims. Am. Compl., Ex A, ECF No. 33; Def.'s Mot. to Dismiss, Ex. 4, ECF No. 30. This judgment fixed the parties' rights—the Board was determined to be liable to PPES for breach of contract in the amount of $75,000. Prior to trial, the Circuit Court entered final judgments on Porter's other claims. In October 2016 and January 2017, he granted motions to dismiss by the individual defendants and dismissed with prejudice Porter's defamation and intentional infliction of emotional distress claims. Def.'s Mot. to Dismiss, Ex. 2-3, ECF No. 30. The dismissals served as final judgments as to those claims. Under Illinois Supreme Court Rule

7

273, an order of dismissal that does not state it is "without prejudice" or that does not grant the plaintiff leave to file an amended complaint operates as a final adjudication on the merits.[3] *Richter*, 53 N.E.3d at 8-9. *See also Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1204-05 (Ill. 1996) (citing ILL. R. S. CT. 273) (a trial judge's decision to grant a defendant's motion to dismiss operates as a final judgment on the merits for purposes of *res judicata*).

The Circuit Court's judgments are no longer subject to appeal by Porter. Illinois Supreme Court Rule 303 permits an appeal of a final judgment of the Circuit Court to the Illinois Appellate Court. ILL. R. S. CT. 303. According to the Board, Porter filed a notice of appeal with the Illinois Appellate Court for the First Judicial District.[4] Def.'s Reply in Supp. of Mot. to Dismiss 3, ECF No. 64; Def.'s Suppl. Reply in Supp. of Mot. to Dismiss, Ex. A, ECF No. 68. The Board, however, moved to dismiss the appeal after Porter failed to file a docketing statement or a brief, as required by the Illinois Supreme Court Rules. Def.'s Reply in Supp. of Mot. to Dismiss 3, ECF No. 64. On January 8, 2018, the Appellate Court issued an order granting the Board's motion to dismiss Porter's appeal for want of prosecution, finding that no response, record on appeal, or docketing statement had been filed. Def.'s Suppl. Reply in Supp. of Mot. to Dismiss, Ex. A, ECF No. 68.[5] Under Illinois Supreme Court Rule 367, a party may file a petition for a rehearing in the Appellate Court within 21 days after the filing of a judgment. ILL. R. S. CT.

---

[3] This rule does not apply to a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party. *Richter*, 53 N.E.3d at 8-9.

[4] Porter argues in her response to the motion to dismiss that her state case is "on appeal," but she did not provide any specific details about what she filed with the Appellate Court or when she filed it. Pl.'s Resp. to Mot. to Dismiss 3, ECF No. 62. Neither the Board nor Porter specified which Circuit Court judgments Porter sought to appeal.

[5] The Board's reply in support of its motion to dismiss was due and filed on January 5, 2018, three days before the Appellate Court entered its order on the motion to dismiss the appeal. The Board sought and was granted leave to file its Supplemental Reply including a copy of the Appellate Court's January 8, 2018 order.

367. A party is also permitted to petition for leave to appeal a judgment of the Appellate Court to the Illinois Supreme Court within 35 days after the entry of such judgment. ILL. R. S. CT. 315. As of March 28, 2018, however, more than 70 days after the Appellate Court entered its order dismissing Porter's appeal, Porter had not filed a request for a rehearing or a petition for leave to appeal to the Supreme Court. Def.'s Mot. for Leave to Suppl. the R. in Supp. of its Mot. to Dismiss ¶ 3, ECF No. 100.[6] On March 2, 2018, the Appellate Court issued a mandate under Supreme Court Rule 368 stating that final judgment in the case was entered on January 8, 2018, the date the Appellate Court entered its order granting the Board's motion to dismiss the appeal. *Id.* ¶ 4, Ex. 2, ECF No. 100. Once a reviewing court dismisses an appeal and the mandate is filed in the circuit court, "enforcement of the judgment may be had and other proceedings may be conducted as if no appeal had been taken." ILL. R. S. CT. 369(b). The appellate process, therefore, has concluded and Porter's state court litigation is complete. The judgments of the Circuit Court finding the Board liable for breach of contract and dismissing Porter's other claims terminate the case, fix the parties' rights absolutely, and leave only the enforcement of the judgment.

The third requirement for *res judicata* is also satisfied. An identity of cause of action exists between Porter's state court lawsuit and her federal lawsuit. Under Illinois law, to determine whether two cases comprise the same cause of action, courts apply the "transactional test." *Garcia v. Village of Mount Prospect*, 360 F.3d 630, 637 (7th Cir. 2004) (citing *River Park*, 703 N.E.2d at 891). Under this test, two causes of action are the same if the claims "arise from the same group of operative facts," regardless of whether they assert different theories of

---

[6] On March 28, 2018, the Board sought and was granted leave to supplement the record in support of its motion to dismiss with additional information regarding Porter's appeal. Porter did not seek leave to file a response to the supplemental information.

recovery and "even if there is not a substantial overlap of evidence." *Id.* (quoting *River Park, Inc.*, 703 N.E.2d at 893) (alterations omitted). Whether a single cause of action exists should be "determined pragmatically," with consideration of "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Lane v. Kalcheim*, 915 N.E.2d 93, 100 (Ill. App. Ct. 2009) (citing *River Park*, 703 N.E.2d at 893 (1998)).

Here, although Porter's state and federal cases plead different theories of relief under different provisions of state and federal law, both cases arise from the same core of operative facts—an alleged course of retaliatory conduct by the Board's employees and the Board's knowledge and tolerance of such conduct. Porter's claims in this case and in the state case are based upon allegations that Saffold and others retaliated against Porter for speaking out about Saffold's attempt to solicit bribes from Porter in 2006. In both cases, Porter alleges that the Board was aware of the wrongful conduct, but took no action. In the state court case, Porter alleged that "the [d]efendants learned of Porter's actions to bring to light Saffold's repeated attempts to force Porter to pay the quid pro quo bribe, and then began to act collectively [sic] retaliate against her by preventing her and her company, PPES, from continue [sic] to [sic] business with CPS." Def.'s Mot. to Dismiss, Ex. 1 ¶ 102, ECF No. 30. She also claimed that the Board wrongfully failed to pay her and her company for services rendered to the Board. *Id.* at ¶¶ 157, 212. In addition, Porter alleged that the Board "tolerated a wide range of retaliatory actions taken by the individual Defendants against Porter and PPES," refused to terminate or discipline Saffold for her misconduct, and lost or intentionally destroyed recordings of Porter's conversations with Saffold. *Id.* at ¶¶ 83, 87, 94. Similarly, Porter's amended complaint in this lawsuit alleges that the defendants "devised a plan to remove and blacklist Porter from doing

business with CPS and refused to pay her for her work after she spoke out about bribery and corruption in exercise of her first amendment rights." Am. Compl. ¶ 39, ECF No. 28. Porter alleges that the Board had a widespread practice of concealing misconduct by its senior leadership, including retaliation, which encouraged or motivated the defendants to retaliate against her. *Id.* ¶¶ 44, 49. She also claims that the Board failed to discipline Saffold and destroyed or hid evidence implicating Saffold in misconduct. *Id.* ¶¶ 34, 44. These parallels between the factual allegations in the two cases are a "telling indication" that an identity of cause of action exists between the cases. *See River Park*, 703 N.E.2d at 894 (holding that the parallels between factual allegations in the plaintiff's state and federal complaints were "the most telling indication of identity of cause of action" in the case). Both of Porter's complaints allege the same group of operative facts that give rise to her various theories asserting a right to legal remedies against the Board.

Porter argues that her federal case is a separate cause of action because it seeks relief for a different type of retaliation than that alleged in her state court case. Porter's state court case alleges that the defendants' retaliatory conduct was motivated by Porter reporting Saffold's bribe solicitation to the authorities. According to Porter, her federal case is different because it alleges that the defendants' retaliatory conduct was motivated by Porter filing the state court lawsuit in 2008. That's not quite right. As the Board points out, Porter's amended complaint in this case does not explicitly allege that the retaliation she suffered was due to the filing of her state court lawsuit. A plaintiff may not amend her complaint in a response to a motion to dismiss, *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996), but she may elaborate on the complaint's factual allegations if the elaborations are consistent with the pleadings, *see Geinosky*, 675 F.3d at 745 n.1. Porter's amended complaint in this case references the 2008 state court lawsuit and, in

11

some instances, characterizes the alleged retaliation generally as motivated by the exercise of her First Amendment rights. The Court therefore finds that Porter's argument in her response brief is a permissible elaboration on the amended complaint. It does not, however, convince the Court that Porter's federal lawsuit is a separate cause of action from her state court case.

Although Porter's state court case was originally filed in 2008, Porter filed multiple amended complaints thereafter. In September 2016, she filed a sixth amended complaint. Her sixth amended complaint alleged and sought relief for conduct that occurred well after the filing of her initial complaint in 2008. For example, her breach of contract claims were based on more than 100 contracts allegedly offered to the Board between 2006 and 2014. Def.'s Mot. to Dismiss, Ex. 1 ¶¶ 110, 163, ECF No. 30. She alleged that the Board breached those contracts by failing to pay for the services she provided and by obstructing schools, faculty, staff, and parents from working with her. *Id.* ¶¶ 151, 157-58, 204, 208-09, 212-13. In addition, Porter's claims for intentional infliction of emotional distress were based on retaliatory conduct that began in 2007 and continued into 2009 and 2010. *Id.* ¶¶ 506-510, 523. Her state court case, therefore, was not limited to pre-2008 conduct. Quite the opposite, Porter asked the state court to award her damages based on a course of conduct by the Board and its employees that began in 2007 and continued on into at least 2014, six years after she initially filed the lawsuit.

The retaliatory events that Porter alleges in her state and federal lawsuits occurred over the course of several years, but the passage of time between certain events that arise from the same operative facts does not preclude a finding of a single cause of action for purposes of *res judicata*. *See Doe v. Gleicher*, 911 N.E.2d 532, 540 (Ill. App. Ct. 2009). None of the relevant facts alleged in Porter's federal lawsuit occurred after the filing of her sixth amended complaint

in state court.[7] Porter, therefore, could have included her Section 1983 claim against the Board in her sixth amended complaint. *See Doe*, 911 N.E.2d at 540 (Ill. App. Ct. 2009) (*res judicata* barred plaintiffs' subsequent lawsuit because plaintiffs could have amended their complaint in the first lawsuit to incorporate additional claims that were based on the same operative facts and that came to light before the litigation was terminated); *Arlin-Golf, LLC v. Village of Arlington Heights*, 631 F.3d 818, 822 (7th Cir. 2011) (finding that *res judicata* applied where the plaintiff's state and federal lawsuits both relied on the same operative facts, all of which occurred before the judgment in the first case, and no significant additional facts occurred between the judgment in the first case and the date on which the second lawsuit was filed).

Porter's assertion that her federal claims are based on retaliation motivated specifically by her filing of the state court case is, at best, an alternative legal theory for relief, which does not constitute a separate cause of action. The retaliation for which Porter sought relief in state court and for which she now seeks relief in federal court arises from the same group of operative facts—indeed, it is precisely the same conduct. Whether the alleged retaliation was motivated by Porter's reports to law enforcement authorities or by her filing of the state court lawsuit in 2008 simply does not matter. Porter does not allege or argue that there was a particular course of retaliation attributable to either; the same course of allegedly retaliatory conduct gives rise to her retaliation claims under the legal theories advanced in both the state litigation and this case. Porter's claim that the Board had *de facto* policies of concealing misconduct and failing to discipline its employees also arises from the same operative facts as her state court complaint,

---

[7] Under Illinois law, "it is well established that the facts as they exist at the time of judgment determine whether *res judicata* bars a subsequent action." *Doe*, 911 N.E.2d at 540. Therefore, even facts that occurred after the filing of Porter's sixth amended complaint but before the entry of the Circuit Court's judgments could be considered to determine whether *res judicata* bars Porter's federal complaint.

which alleged that the Board was aware of and tolerated the retaliatory conduct, refused to discipline Saffold, and lost or destroyed evidence of Saffold's misconduct. Porter's federal lawsuit does not present a new cause of action. It is simply an assertion of alternative types of liability and relief pursuant to different legal theories arising out of the same facts that gave rise to her state court lawsuit.

All three requirements for *res judicata* under Illinois law are satisfied here. The doctrine of *res judicata*, however, does not apply if the party against whom it is sought did not have a full and fair opportunity to litigate the issue in the original case. *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007). "A plaintiff is afforded a full and fair opportunity to litigate his claims so long as the state court proceedings complied with the minimum procedural requirements of the Due Process Clause." *Id.* Porter has not shown that the Circuit Court denied her a full and fair opportunity to litigate her claims against the Board. The Circuit Court allowed Porter to amend her complaint in that case a total of six times over the course of eight years.[8]

---

[8] Porter submitted a supplemental response to the defendant's motion to dismiss in which she argued that "Judge S[n]yder repeatedly stated that the state case was about the breach of contract only and that I would have to file any other causes of actions in another complaint." Pl.'s Emergency Mot. for Leave to Suppl. Resp. 1, ECF No. 69. At a January 31, 2018 hearing before this Court, Porter similarly stated that she was unable to bring certain claims in her state court case because the Judge did not allow her to do so. Porter requested additional time "to submit the court order and/or transcripts" supporting this contention, and was given additional time to further amend the complaint (which would have mooted the Board's pending motion to dismiss; *see* ECF No. 75), but Porter then failed to file the second amended complaint on time. Moreover, despite this further delay, Porter has not provided the Court with the transcripts or court order that she references in her supplemental response. Nor has she presented any legal argument addressing whether such statements denied her a full and fair opportunity to litigate her claims against the Board. Porter's undeveloped argument on this issue is insufficient to call into doubt "the quality, extensiveness, or fairness of procedures" followed by the Circuit Court. *See Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481 (1982) (applying the "full and fair opportunity" exception to the doctrine of collateral estoppel and holding that "redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation"). Furthermore, the Seventh Circuit has held that a plaintiff cannot argue that she was not provided a full and fair opportunity to litigate a claim where she failed to

Furthermore, Illinois circuit courts have jurisdiction to hear Section 1983 claims. *See, e.g.*, *Garcia*, 360 F.3d at 639. ("the states and the federal government share concurrent jurisdiction" over Section 1983 claims). Under Illinois law, circuit courts lack original jurisdiction over certain civil rights claims that are covered by the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/1-101 *et seq.*, but they may hear such claims after a plaintiff has exhausted her administrative remedies required under the IHRA. *Garcia*, 360 F.3d at 641-42. Because an Illinois circuit court may eventually exercise jurisdiction over federal civil rights claims covered by the IHRA, the IHRA's administrative procedures do not provide a basis for finding that a plaintiff lacked an opportunity to bring her Section 1983 civil rights claims in her previously filed circuit court case. *Id.* at 642-43 (ruling that "the practical difficulties of exhaustion will not prevent res judicata from applying"). Therefore, even if Porter's Section 1983 claims fell within the scope of the IHRA,[9] she still had a full and fair opportunity to bring those claims during the course of her litigation in state court.

After pursuing her claims against the Board in the Circuit Court of Cook County for more than eight years, Porter is not permitted to relitigate her case in federal court based on different theories of liability and relief that arise from the same facts she alleged in her first case. The Court finds that *res judicata* bars Porter's Section 1983 claim against the Board (Count I) and

---

properly seek appellate review of the state court's refusal to consider the claim. *Lolling v. Patterson*, 966 F.2d 230, 236 (7th Cir. 1992).

[9] Federal courts in this district have held that First Amendment claims do not fall within the scope of the IHRA. *Stenson v. Town of Cicero*, No. 03 C 6642, 2005 WL 643334, at *13 (N.D. Ill. Mar. 15, 2005) (holding that the language of the IHRA "demonstrates that it is intended to cover retaliation for opposing discrimination or assisting or participating in an investigation, proceeding, or hearing relating to unlawful discrimination" and the statute does not cover retaliation for the exercise of free speech rights); *Hernandez v. Cook Cty. Sheriff's Office*, 76 F. Supp. 3d 739, 743-44 (N.D. Ill. 2014) (finding that any reference to the freedom of speech clause in the First Amendment is "notably absent" from the list of protected characteristics in the IHRA).

grants the Board's motion to dismiss on this ground. Because any amendment of the complaint would be futile, the claim is dismissed with prejudice. *See Anderson v. Guaranteed Rate, Inc.*, No. 13 C 431, 2013 WL 2319138, at *5 (N.D. Ill. May 29, 2013).

## II. *Monell* Claim

Even if Porter's claim against the Board was not barred by *res judicata*, dismissal would still be warranted because she has failed to adequately allege a Section 1983 claim. A governmental entity, such as the Board, cannot be held liable for the unconstitutional acts of its employees based on a theory of respondeat superior. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692 (1978). Instead, Section 1983 liability for governmental entities exists only if a constitutional violation was caused by a government policy or custom. *Monell*, 436 U.S. at 694. Liability under *Monell* can be established through the existence of (1) an official policy adopted and promulgated by the officers of the governmental body; (2) an unofficial governmental practice or custom that is widespread and well settled; or (3) an act by an official with final policy-making authority. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). Here, Porter alleges that the Board is responsible for her constitutional injuries under the second theory—the existence of *de facto* policies, practices, or customs that were so pervasive that they carried the force of law.

"To survive a motion to dismiss, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Detailed factual allegations are not required, but the plaintiff must provide more than

16

"labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.*, 550 U.S. at 555. At a minimum, the plaintiff must plead enough facts "to present a story that holds together." *Catinella v. County of Cook, Illinois*, 881 F.3d 514, 517 (7th Cir. 2018). When considering a motion to dismiss, the court construes the complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true, and draws all inferences in the plaintiff's favor. *Berger*, 843 F.3d at 289-90 (7th Cir. 2016).

*Monell* claims are not subject to a heightened pleading standard. *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). To survive a motion to dismiss, Porter must plead factual content that allows the Court to plausibly infer that the Board had a widespread, unofficial policy, practice, or custom that deprived her of her constitutional rights. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). The complaint must allege that the policy or custom was "the moving force" behind the constitutional violation. *Estate of Sims ex rel. Sims*, 506 F.3d at 514. Bare assertions that such policies existed, without more, will not suffice. *See McCauley*, 671 F.3d at 617-18. The Seventh Circuit has not adopted any bright-line rules defining a "widespread custom or practice" and there is no consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must occur more than once, or even three times. *Thomas*, 604 F.3d at 303. In other words, a widespread practice cannot be demonstrated by an isolated incident. *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). At the pleading stage, however, a plaintiff is not necessarily required "to identify every other or even one other individual," besides herself, who has been injured as a result of the alleged widespread practice for the *Monell* claim to survive a motion to dismiss. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016).

In her amended complaint, Porter alleges the existence of several *de facto* policies, practices, or customs: concealing or suppressing misconduct by senior leadership, such as bribery, vendor steering, waste of resources, corruption, intimidation, or retaliation; failing to maintain accurate and complete records of complaints and investigations of misconduct by senior leadership officials; hiring and retaining unqualified employees and failing to properly train, monitor, or supervise senior leaders; and maintaining a "code of silence" resulting in a refusal or failure to report misconduct. Porter also alleges that the Board's policy of concealing misconduct included failing to sufficiently investigate allegations of misconduct, failing to accept complaints, failing to record witness statements or preserve evidence, failing to interview Saffold and her associates, failing to properly and sufficiently discipline Saffold and her associates, fabricating evidence, misrepresenting facts, and failing to initiate prompt disciplinary procedures related to alleged misconduct. Porter claims that the *de facto* policies encouraged or motivated Saffold and Byrd-Bennett to engage in conduct that violated Porter's First and Fourteenth Amendment rights. She alleges that the policies allowed Saffold and Byrd-Bennett to retaliate against her for filing her state court lawsuit, in violation of her First Amendment right to free speech and her Fourteenth Amendment right to equal protection. Porter also claims that Saffold and Byrd-Bennett violated her Fourteenth Amendment right to due process by cancelling her contracts.

In support of her allegations that these widespread practices existed, Porter does not allege any facts unrelated to her own experience with Saffold. Her complaint lacks any factual content showing that senior Board employees, other than Saffold, engaged in misconduct that was concealed or unchecked as a result of the Board's alleged policies. The gravamen of a *Monell* claim "is not individual misconduct" by certain employees, but "a *widespread practice*

that permeates a critical mass of an institutional body." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (emphasis in original). Although the Seventh Circuit held in *White* that the plaintiff in that case was not required to identify in his complaint other individuals who were injured by the alleged practices of the defendant city, the Court found other factual content in that case supported the plaintiff's *Monell* claim that a widespread practice existed. 829 F.3d at 844. Specifically, the Court found that the existence of a standardized form used by the defendant's police department, in combination with the plaintiff's individual experience, was sufficient to satisfy the requirements of Rule 8(a)(2). *Id.* Here, however, no such additional factual content exists. Porter has not alleged any facts from which the Court can reasonably infer that the Board had a widespread "code of silence" or a practice of concealing misconduct and failing to supervise its senior-level employees.

In her response to the Board's motion to dismiss, Porter cites to a complaint filed in another lawsuit against the Board and Saffold, *Khan v. Board of Education of the City of Chicago et al.*, No. 16 C 08668 (N.D. Ill.). In that complaint, the plaintiff, a former principal employed by the Board, alleged misconduct by Saffold after the plaintiff resisted Saffold's pressure to make purchases from Saffold's preferred vendors. These additional allegations regarding misconduct by Saffold, however, do not give rise to a reasonable inference that the Board maintained a widespread practice of concealing misconduct by its senior-level employees. Porter does not allege sufficient factual content to suggest that the Board repeatedly concealed misconduct or failed to supervise its employees to an extent that the practice "permeated a critical mass of the institutional body."

Because Porter has failed to sufficiently allege a widespread practice, policy, or custom, the Court dismisses Porter's Section 1983 claim and need not address the Board's arguments regarding the sufficiency of the underlying constitutional violations alleged by Porter.

\* \* \*

For the reasons stated above, the Court grants the Board's motion to dismiss Porter's Section 1983 claim. Porter's Section 1983 claim against the Board (Count I) is dismissed with prejudice. Because Porter's remaining claims against the individual defendants have also been dismissed, her indemnification claim against the Board (Count V), which is dependent upon a finding of liability against the individual defendants, is also dismissed.

Date: April 25, 2018

John J. Tharp, Jr.
United States District Judge